**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LOCAL 1522 OF COUNCIL 4, | : | |
| AMERICAN FEDERATION OF STATE | : | CIVIL ACTION NO. |
| COUNTY AND MUNICIPAL | : | 15-CV-1019 (JCH) |
| EMPLOYEES, ET AL., | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| BRIDGEPORT HEALTH CARE | : | MARCH 21, 2018 |
| CENTER, INC., ET AL., | : | |
|     Defendants. | | |

**RULING ON MOTION FOR CLASS CERTIFICATION (DOC. NO. 194)**

## I.    INTRODUCTION

Carmen Espejo, Natividade Goncalves, Marion V. Perez, and Carlota Rafael on

behalf of themselves and certain other employees of Bridgeport Health Care Center,

Inc. (the "putative representatives") and labor organization Local 1522 of Council 4,

American Federation of State, County, and Municipal Employees, AFL-CIO ("Local

1522"), bring this action against defendants, Bridgeport Health Care Center, Inc.

("BHCC") and BHCC Chief Operating Officer Chaim Stern ("Stern").  In their Third

Amended Complaint (Doc. No. 179), the plaintiffs bring twenty-seven claims against one

or both defendants, arising from the defendants' alleged failure to fund employment

benefits programs, including a health plan, a pension plan, disability insurance plans,

life insurance plans, as well as the defendants' failure to make payments to credit

unions and other designated entities on behalf of BHCC employees.

Pending before the court is the plaintiffs' Motion for Class Certification (Doc. No.

194).  In that Motion, the plaintiffs propose two subclasses:

(a) All employees of Bridgeport Health Care Center from January 1, 2015 to the present, who are represented by Local 1522, who receive health insurance coverage from Bridgeport Health Care Center pursuant to Article 29 of the parties' collective bargaining agreement, life insurance or disability insurance, and/or have payments deducted for Bridgeport Federal Credit Union, and have union dues deducted from their paychecks.

(b) All employees of Bridgeport Health Care Center from January 1, 2015 to the present, who are represented by Local 1522 and are participants in the Bridgeport Health Care Center Pension Plan pursuant to Article 33 of the parties' collective bargaining agreement.

Mot. for Class Cert. (Doc. No. 194) at 1. The plaintiffs seek an order certifying their proposed subclasses under Federal Rule of Civil Procedure 23(b)(1), (b)(2), and (b)(3). The plaintiffs further seek an order appointing Espejo, Goncalves, Perez, and Rafael as class representatives and the Law Offices of J. William Gagne, Jr. & Associates, P.C. as class counsel. See Memorandum in Support of Motion for Class Certification ("Pl.'s Mem.") (Doc. No. 194-1) at 2.

For the reasons set forth below, the Motion for Class Certification (Doc. No. 194) is denied.

## II.    BACKGROUND

Local 1522 is an unincorporated labor organization that represents certified nursing assistants, dietary workers, ward maid and housekeeping workers, maintenance mechanics, foodservice workers, dietician aides, recreation workers, laundry workers, beauticians, and licensed practical nurses who are employed by defendant BHCC. Third Amended Complaint ("3d Am. Compl.") (Doc. No. 179) at 6 ¶¶ 1–2; Defendants' Answer to Third Amended Complaint ("Def.'s Answer") (Doc. No. 205) at 3. The putative class representatives are employees of BHCC and are part of the

Local 1522 bargaining unit.[1]  3d Am. Compl. at 6–7 ¶¶ 3–6; Def.'s Answer at 3.

Defendant BHCC is a Connecticut corporation.  3d Am. Compl. at 7 ¶ 7; Def.'s Answer at 3.  Defendant Stern is the Chief Operating Officer of BHCC.  3d Am. Compl. at 7 ¶ 8; Def.'s Answer at 3.

This case arises from defendant BHCC's alleged failure to fund various employee benefit programs, including health and life insurance plans and a retirement plans.  3d Am. Compl. at ¶¶ 4–9.  The plaintiffs allege that the defendants withheld money from employee paychecks for these benefit programs, but did not use the funds for the proper purpose.  Id. ¶¶ 17–20.  The plaintiffs further allege that BHCC withheld money from employee paychecks for union dues but did not give that money to the union as promised.  Id. at ¶¶ 5, 21.  Finally, the plaintiffs allege that Chaim Stern is a fiduciary for the employee benefit plans and breached his fiduciary duty, including by using the aforementioned payroll deductions "to pay other unrelated premiums and company obligations."  Id. at 27–34, 39–40, 67–70.

The twenty-seven counts in the Third Amended Complaint fall into the following categories:  (1) breach of contract claims arising from the collective bargaining agreement between Local 1522 and BHCC (Counts One, Two, Twelve, Sixteen, and Seventeen); (2) tort claims including fraud, equitable estoppel, promissory estoppel, misrepresentation, and conversion (Counts Three, Four, Ten, Eleven, Eighteen, Nineteen, Twenty-Five, Twenty-Six, and Twenty-Seven); (3) claims that BHCC failed to

_____

[1] This bargaining unit represents all employees in the above-listed positions, without regard to whether those employees have opted to become union members.  Pl.'s Response to Court Order 255 (Doc. No. 273) at 9.  Employees in the above-listed positions who do not opt to be union members pay an agency fee rather than the "full Union dues."  Id.  References to "Local 1522 members" in this Ruling refers to all members of the Local 1522 bargaining unit.

fund benefit programs alleging violations of the Employee Retirement Income Security Program ("ERISA"), title 29, section 1001 et seq. (Counts Five, Six, Twenty, and Twenty-One); (4) claims that BHCC failed to give required notice to plan participants alleging violations of ERISA (Counts Thirteen, Fourteen, and Fifteen); (5) promissory estoppel claims alleging violations of ERISA (Counts Seven, Eight, Twenty-Two, and Twenty-Three); and (6) claims that Stern violated his fiduciary duty alleging violations of ERISA (Counts Nine[2] and Twenty-Four).  See generally 3d Am. Compl.  The plaintiffs request declaratory relief; injunctive relief; money damages in the form of compensatory, consequential, and punitive damages; and attorneys' fees.  3d Am. Compl. at 74–76.

The plaintiffs have moved for class certification.  See Mot. for Certification (Doc. No. 194).  The plaintiffs propose two subclasses: one devoted to employees who participated in health, life, dental, and other benefits plans, and one specific to employees who were members of the BHCC pension plan.  Id. at 1.  Both proposed subclasses are limited to employees who are represented by the Local 1522 bargaining unit.  Id.  The Motion for Certification is not limited to any particular claims raised by the plaintiffs, and the text of the Plaintiffs' Memorandum reflects the plaintiffs' intent to certify the class as to the thirteen claims brought by the putative representatives.[3]

_____

[2] The court notes that Count Nine does not explicitly cite to any ERISA provision.  However, based on the Third Amended Complaint as a whole, the court concludes that Count Nine, like Count Twenty-Four, is alleging a breach of fiduciary duty pursuant to ERISA as opposed to a common law fiduciary duty claim.

[3] In the Third Amended Complaint, the following claims are brought by the putative class: breach of contract as to the health insurance plan (Count Two); equitable estoppel with respect to the health insurance plan (Count Three); failure to provide benefits with respect to the health plan (Count Six); promissory estoppel pursuant to ERISA with respect to the health plan (Count Seven); breach of fiduciary duty with respect to the health plan (Count Nine); violations of ERISA notice requirements enumerated in title 29, sections 1021, 1024, and 1025 of the United States Code (Counts Thirteen, Fourteen, and

In support of their Motion, the plaintiffs attach Affidavits by the putative representatives (Doc. Nos. 201, 202, 203, 204) and an Affidavit by Gail Richer (Doc. No. 194-3), Strategic Account Executive with UMR, Inc., a corporation that formerly acted as a third party claims administrator for BHCC.  The plaintiffs also provide two charts of claims that were denied for non-payment, one which lists the claims denied by UMR, Inc., see Exh. to Aff. of Gail Richer (Doc. No. 196-1); and (2) a chart that lists claims denied by third-party administrator Meritain Health, with whom BHCC contracted subsequent to its relationship with UMR, Inc. (Doc. No. 233).  Finally, in support of their request that plaintiffs' counsel be appointed class counsel, the plaintiffs attach an Affidavit by plaintiffs' counsel, Attorney William Gagne.  See Affidavit of J. William Gagne, Jr. ("Gagne Aff.") (Doc. No. 194-10).

The defendants did not respond to the Motion for Class Certification.

On July 5, 2017, the court issued an Order directing the parties to inform the court as to whether the benefits plans in question were specific to members of the Local 1522 bargaining unit, or whether the plans covered employees who are not affiliated with Local 1522.  Order (Doc. No. 228).  In response, on July 10, 2017, the parties filed a Joint Stipulation stating, among other things, that "[t]he health plan, pension plan and other employee benefit plans in question do not cover only members of Local 1522." Joint Response (Doc. No. 229).  Two days later, the parties filed a Supplement to their Stipulation, emphasizing that, while the benefits plans cover employees who are not affiliated with Local 1522, the bargaining agreement between Local 1522 and BHCC

---

Fifteen); breach of contract as to the pension plan (Count Seventeen); equitable estoppel with respect to the pension plan (Count 18); failure to provide benefits with respect to the pension plan (Count 21); promissory estoppel pursuant to ERISA with respect to the pension plan (Count 22); and breach of fiduciary duty with respect to the pension plan (Count Twenty-Four).

means that certain terms of the benefits plans only apply to members of the Local 1522 bargaining unit.  For example, employees affiliated with other unions "may negotiate a different retirement age or change the method of calculating the employees' retirement benefit" as well as "negotiate a different annual contribution by the employer or different contribution terms for the employee."  Supplemental Stipulated Statement (Doc. No. 230) at 2.

During a discovery-related conference on August 7, 2017, the court expressed concerns with certifying a class of some, but not all, members of an ERISA plan, and gave the parties an opportunity to submit responses to those concerns. On August 14, 2017, the plaintiffs submitted a Response (Doc. No. 250), in which the plaintiffs renewed their argument that, because different unions may negotiate different terms for the employee benefits in question, the proposed classes of fewer than all plan members could be certified.

On September 7, 2017, the court issued yet another Order expressing its concerns with certifying a class of fewer than all plan members for ERISA claims.  Order (Doc. No. 255).  The court ordered the parties to produce the terms of the benefits plans themselves, which had not previously been provided to the court.  Id.  The court also invited briefing from the parties related to the court's concerns about certifying the requested classes.  Id.  The parties jointly filed the terms of the benefits plans in question on September 14, 2017.  Joint Response (Doc. No. 265).  In addition, the plaintiffs filed a Response to that Order on September 29, 2017, which Response contained legal argument as to the court's stated concerns respecting class certification. Plaintiff's Response ("Pl.'s Response") (Doc. No. 273).  In keeping with their pattern of

silence as to the Motion to Certify, the defendants did not take the opportunity to respond to the court's concerns.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) contains four "[p]rerequisites" for class certification:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are referred to as "numerosity, commonality, typicality, and adequacy of representation."  E.g., Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 568 U.S. 455, 460 (2013).  Class certification is appropriate only if the court is satisfied, "after a rigorous analysis," that the proposed class meets each of the four prerequisites.  See Wal-Mart Stores v. Dukes, 564 U.S. 338, 350–51 (2011).

In addition to satisfying the four prerequisites, a class action must qualify under at least one of the types of class actions listed in Rule 23(b).  The types of class actions are those in which,

> (1) prosecuting separate actions by or against individual class members would create a risk of:  (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or  (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Amara v. CIGNA Corp., 775 F.3d 510, 519 (2d Cir. 2014) (quoting Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010)).  A court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that" this is the case.  Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 251 (2d Cir. 2011) (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006)).  In determining whether a putative class meets the requirements of Rule 23, the court must resolve any factual disputes and find any facts relevant to this determination.  See In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 41.  The court's obligation to make such determination "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement."  Id.  The Second Circuit grants trial courts substantial discretion in determining whether to grant class certification because of the Circuit's "longstanding view that the district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted."  In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir. 2001).

## IV.    DISCUSSION

### A.    Class Action Prerequisites

#### 1.    Numerosity

The first prerequisite for class certification is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  For the reasons that follow, the court finds that the numerosity prerequisite is met.

"The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."  Central States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, 504 F.3d 229, 244–45 (2d Cir. 2007); see In re Barrick Gold Sec. Litig., 314 F.R.D. 91, 98 (S.D.N.Y. 2016).  Numerosity is presumed for a class in excess of forty members.  See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Kaye v. Amicus Mediation & Arbitration Grp., Inc., 300 F.R.D. 67, 78 (D. Conn. 2014).  "[E]vidence of exact class size or identity of class members" is not required.  Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).  Rather, "the Court may rely on reasonable inferences drawn from the available facts in order to estimate the size of the class."  New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, No. 08-CV-5310 (DAB), 2016 WL 7409840, at *3 (S.D.N.Y. Nov. 4, 2016) (quoting In re NASDAQ Mkt.-Makers Antitrust Litig., 169 F.R.D. 493, 509 (S.D.N.Y. 1996)).

Here, the putative subclasses are comprised of approximately 400 people with respect to the first subclass, and 250 to 300 people with respect to the second subclass. See Affidavit of Anna Montalvo (Doc. No. 194-9) at ¶¶ 11, 14.  In the absence of any evidence to the contrary, the court concludes that the plaintiffs have shown by a

preponderance of evidence that the purported classes include well over forty people, and that the class is thus "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

2. Commonality

The second prerequisite for class certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the reasons that follow, the court finds that the commonality prerequisite is met.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart, 564 U.S. at 349–50 (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1980)). To satisfy the commonality requirement, the "claims must depend upon a common contention. . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350. However, "to satisfy commonality, [the] common questions need not overshadow potential individual issues; common questions must simply exist." Mahon v. Chicago Title Ins. Co., 296 F.R.D. 63, 73 (D. Conn. 2013) (internal quotation marks and brackets omitted). Thus, "minor factual differences will not preclude class certification if there is a common question of law." Id. at 73 (internal quotation marks omitted).

The plaintiffs argue that the issues in this case are overwhelmingly common issues of law and fact and, therefore, the commonality prong is easily met. See Pl.'s Mem. at 14. The court agrees that the putative "class members have suffered the same injury," as required for commonality. Wal-Mart, 564 U.S. at 349–50. Although individual

class members may have experienced harms which vary in type and degree, the plaintiffs' arguments as to the defendants' obligations pursuant to the terms of the collective bargaining agreement, the plans, and ERISA constitute "common contention[s]" that are "capable of classwide resolution."  Id. at 350.  Furthermore, neither the plaintiffs nor the defendants have suggested that the defendants' conduct depended on individual employees in any way.  Therefore, this court concludes that the plaintiffs have shown by a preponderance of the evidence that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

> 3.      Typicality

The third prerequisite for class certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  For the reasons that follow, the court finds that the typicality prerequisite is met here.

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Central States, 504 F.3d at 245; Wynn v. N.Y. City Hous. Auth., 314 F.R.D. 122, 126 (S.D.N.Y. 2016).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  Robidoux, 987 F.2d at 936–37; see also Wynn, 314 F.R.D. at 126 ("The typicality requirement may be satisfied where injuries derive from a unitary course of conduct by a single system." (internal quotation marks omitted)).  On the other hand, "[a] lack of typicality may be found in cases where the

named plaintiff was not harmed by the conduct he alleges to have injured the class or the named plaintiff's claim is subject to 'specific factual defenses' atypical of the class." Wynn, 314 F.R.D. at 126–27 (internal quotation marks and brackets omitted).

The putative representatives have submitted sworn Affidavits stating, in pertinent part, that they all had money withheld from their paychecks for union dues and for benefits, that they have all had insurance canceled, and that this cancellation of insurance resulted in various harms.[4]  See generally Affidavit of Carmen Espejo (Doc. No. 201); Affidavit of Marion Perez (Doc. No. 202); Affidavit of Natividade Goncalves (Doc. No. 203); Affidavit of Carlota Rafael (Doc. No. 204).

The court concludes that the putative representatives have met their burden of proving by a preponderance of the evidence that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant[s'] liability," Wynn, 314 F.R.D. at 126, and that "the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented," Robidoux, 987 F.2d at 936–37; New Jersey Carpenters, 2016 WL 7409840 at *4.  The court thus concludes that the typicality prerequisite is met under Federal Rule of Civil Procedure 23(a)(3).

4.        Adequacy of Representation

The fourth prerequisite for class certification is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). Adequacy of representation entails two inquires: "whether: 1) plaintiff's interests are

---

[4] The court notes that, in their Third Amended Complaint, the plaintiffs allege that Local 1522 has not received payment of union dues from the defendants as mandated by the collective bargaining agreement.  See 3d Am. Compl. at ¶ 22.

antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000); see also Sallustro v. CannaVest Corp., 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015).

With respect to the putative representatives, the court concludes that they "ha[ve] a sufficient interest in the outcome of the case to ensure vigorous advocacy," and there is no reason to believe that a conflict exists between the putative representatives and the other putative class members. Sallustro, 93 F. Supp. 3d at 278. The putative representatives—like other putative class members—have an interest in this court finding that the defendants violated their contractual obligations to members of Local 1522, and their statutory and common law obligations to all members of the benefit plans at issue. If the court so finds, and if the court grants the relief the plaintiffs seek on behalf of all class members, then the putative representatives, like other putative class members, will benefit from relief such as reprocessing of their claims; declaration of their rights; and compensatory, consequential, or punitive damages.

With respect to the adequacy of proposed class counsel, the plaintiffs assert that Attorney Gagne, currently representing the plaintiffs, "has done extensive work in identifying the claims in this action and engaging in extensive discovery, has far-reaching experience representing unions and their members, and is well-versed in the areas of law involved in this suit." Pl.'s Mem. at 18. In an Affidavit authored by Attorney Gagne and attached to the Motion for Certification (Doc. No. 194-10), Attorney Gagne alludes to the fact that he does not have experience litigating class action lawsuits. See Gagne Aff. at ¶ 5. However, he notes that he has litigated many cases "on behalf of

retirees and union members" which "were federal court cases in which the union, along with a group of union members and / or retirees, brought suit against an employer on behalf of all retirees or union members affected by the same issue." Id.

In the two years since this case was filed, the court has had ample opportunity to observe Attorney Gagne and his associate in their role as advocates for the plaintiffs, and has no reservations with respect to the sincerity and zealousness of plaintiffs' counsel. Nevertheless, the court notes that it has some concerns with respect to the capacity of the Law Offices of J. William Gagne, Jr., and Associates to adequately represent the proposed classes, in light of the fact that the firm is comprised of two attorneys, neither of whom have ever litigated a class action lawsuit to this court's knowledge. For good reason, experience with class action litigation is commonly cited by courts as the basis for finding counsel adequate. Cf., e.g., Meidl v. Aetna, No. 15-cv-1319 (JCH), 2017 WL 1831916, at *15 (D. Conn. May 4, 2017) (representation adequate where plaintiff's counsel had extensive class action litigation experience as well as experience with the subject matter of the suit, namely mental health benefits coverage); Kindle v. Dejana, 315 F.R.D. 7, 12 (E.D.N.Y. 2016) (representation adequate where plaintiff's counsel had "extensive experience in litigating complex class actions including ERISA matters"). That being said, because the court concludes that the plaintiffs' Motion to Certify fails on independent grounds, the court does not reach a conclusion with respect to the adequacy of representation in this case.

    B.          Types of Class Actions

The plaintiffs argue that this lawsuit meets the requirements of all three types of

14

class actions outlined in Federal Rule of Civil Procedure 23(b)(1), (b)(2), and (b)(3).[5]
See Pl.'s Mem. at 18.  For the reasons set forth below, the court concludes that the
proposed classes cannot be certified under any of the 23(b) provisions.

1.      Rule 23(b)(1) Type

The first type of class action is one in which "prosecuting separate actions by or
against individual class members would create a risk of" either "inconsistent or varying
adjudications with respect to individual class members that would establish incompatible
standards of conduct for the party opposing the class" or "adjudications with respect to
individual class members that, as a practical matter, would . . . substantially impair or
impede [non-parties'] ability to protect their interests."  Fed. R. Civ. P. 23(b)(1).

"Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the
members of the class alike," while Rule 23(b)(1)(B) is appropriate in situations where
relief for some interested individuals may conflict with granting relief to others, such as
"'limited fund' cases."[6]  Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997)
(internal quotation marks omitted); see also Wal-Mart, 564 U.S. at 361 n.11 (quoting
Amchem).  As the Supreme Court has aptly summarized, the justification for a Rule
23(b)(1) class is "that individual adjudications would be impossible or unworkable."
Wal-Mart, 564 U.S. at 361.  In this case, the court concludes that certification of the

---

[5] The court notes that the Second Circuit has indicated that classes appropriately certified under
Rule 23(b)(1) or (b)(2) should not also be certified under (b)(3).  See Robertson v. Nat'l Basketball Assoc.,
556 F.2d 682, 685 (2d Cir. 1977).  Furthermore, the Supreme Court's analysis in Wal-Mart strongly
suggests that classes which are appropriate for certification under one or both of the "traditional" types of
class actions (23(b)(1) or (b)(2)) will not be appropriate for certification under the third type, (b)(3), and
vice versa.  Wal-Mart, 564 U.S. at 361–62.

[6] Accordingly, "[t]he Rule provides no opportunity for (b)(1) [ ] class members to opt out, and does
not even oblige the District Court to afford them notice of the action."  Wal-Mart, 564 U.S. at 362.

proposed subclasses for the claims alleged under 23(b)(1) would be improper, for two reasons.

First, in deciding motions for class certification, courts must consider whether the proposed class "fails to include a substantial number of person with claims similar to those of the class members."  David F. Herr, <u>Ann. Manual for Complex Lit.</u> § 21.222 (4th ed.).  The court concludes that the proposed classes are under-inclusive with respect to the plaintiffs' fiduciary duty claims (Counts Nine and Twenty-Four) as well as the failure-to-fund claims (Counts Five, Six, Twenty, and Twenty-One).  These claims allege harm to all members of the benefits plans at issue and should be litigated by or on behalf of the plans as a whole, not just by plan members who are members of the Local 1522 bargaining unit.  The court reaches this conclusion based on both Rule 23 and on ERISA.

With respect to the breach of fiduciary duty claims specifically, ERISA creates a fiduciary duty to plans, not individual participants or beneficiaries.  <u>See</u> 29 U.S.C. § 1109(a) (describing fiduciary duty in terms of duty owed to plan); <u>In re Marsh ERISA Litigation</u>, 265 F.R.D. 128, 142 (S.D.N.Y. 2010) (describing ERISA breach-of-fiduciary-duty claims as "particularly appropriate" for certification under 23(b)(1) for this reason). On that basis, this court has previously described a lawsuit "involving the application of an ERISA-covered plan" to employee beneficiaries as an example of "the profile for certification" under Rule 23(b)(1).  <u>Petrolito v. Arrow Fin. Servs., LLC</u>, 221 F.R.D. 303, 313 (D. Conn. 2004); <u>see also</u> Comment to 1966 Amendment to Rule 23(b)(1) (giving breach of fiduciary duty "affecting the members of a large class of . . . beneficiaries" as an example of an appropriate class for 23(b)(1) certification).  Because the defendants'

fiduciary duty relates to the plan, not individual class members, a class of all plan members would likely be appropriate for certification as to the ERISA breach of fiduciary duty claims.  See, e.g., In re Marsh ERISA Litigation, 265 F.R.D. at 142 (certifying class of "all current and former participants and beneficiaries of the Plan" who were allegedly harmed).  Allowing litigation to proceed without all plan members joined or certified, however, would create the risk of establishing "inconsistent standards of conduct" for the defendants, and could also "be dispositive of the interests of the other members not parties" to the pending litigation, which are, of course, precisely the outcomes that 23(b)(1) is designed to avoid.  Fed. R. Civ. P. 23(b)(1).

Indeed, the Supreme Court has concluded that ERISA requires that suits alleging violations of fiduciary duty owed to a plan "as a whole" must be brought in a representative capacity on behalf of the plan itself.  Massachusetts Mutual Life Insurance Company v. Russell, 473 U.S. 134, 140 (1985).  In Russell, the plaintiff alleged that the plan administrator breached fiduciary duty pursuant to ERISA by failing to timely disburse disability benefits owed to the plaintiff.  Id. at 136.  The Russell Court concluded that ERISA's breach of fiduciary duty provision, title 29, section 1109 of the United States Code, created a duty to the entire plan, as opposed to individual beneficiaries.  Id. at 142.  Therefore, where the relief sought "inures to the benefit of the plan as a whole," individual suits for relief are improper.  Id. at 140.

The Second Circuit has similarly held that a duty owed to a plan as a whole must be enforced on behalf of the plan, rather than by individual beneficiaries or a subset of beneficiaries.  For example, in Coan v. Kaufman, 457 F.3d 250 (2d Cir. 2006), an individual plaintiff brought a claim pursuant to ERISA, title 42, section 1132(a)(2).  The

Second Circuit upheld the lower court's granting of summary judgment to the defendants on the basis that the individual plaintiff was not acting as a representative for all plan members. In Coan, the Court of Appeals observed that the common law of trusts provides a starting point for ERISA analysis, and that, under that common law tradition, beneficiaries bringing claims "[o]rdinarily" should join other beneficiaries "if their interests would be affected by the decree." Coan, 457 F.3d at 260. The Court of Appeals held that Coan failed to demonstrate that she was bringing her suit in a representative capacity where she brought suit "without notifying or otherwise involving other plan participants." Id. at 261. The Court of Appeals concluded that allowing the suit to proceed anyway would "create significant practical difficulties and opportunities for abuse," including the possibility that Coan could reach a settlement with the defendants that would "disproportionately, or even exclusively, benefit her," and that the outcome in Coan's case could be binding on other participants. Id. at 261–62. The court concludes that the same risks identified by the Court of Appeals in Coan are present here.

Furthermore, the plaintiffs have made no attempt to demonstrate that they are protecting the interests of plan members who are not members of the Local 1522 bargaining unit. The plaintiffs argue that ERISA only requires plan administrators to treat "similarly situated" participants in a consistent manner. Pl.'s Response at 3 (quoting Alday v. Raytheon Co., 619 F. Supp. 2d 726, 736 (D. Ariz. 2008)). The plaintiffs argue that the other plan members are not similarly situated to Local 1522 members because members of the Local 1522 bargaining unit "work[ ] in specific job classifications such as Certified Nursing Assistants, Ward Maids, Maintenance

Mechanics, [and] Dietitian Aides."  Pl.'s Response (Doc. No. 273) at 3.  However, the

plaintiffs have not offered any basis upon which the court could conclude that

distinctions among job classifications are relevant to the defendants' fiduciary

responsibilities, and the court knows of none.[7]

To the contrary, the overwhelming majority of classes that are certified in cases

bringing fiduciary duty or failure-to-fund claims are composed of all members of a given

plan or all employees of an organization, including the case that plaintiffs cite in support

for their position, Alday v. Raytheon.  619 F. Supp. 2d at 734 (certifying a class of

"employees, spouses of employees, and dependants of employees" who were eligible

for certain benefits); see also In re Marsh ERISA Litigation, 265 F.R.D. at 142 (certifying

class of "all current and former participants and beneficiaries of the Plan" who were

allegedly harmed); Mezyk v. U.S. Bank Pension Plan, Nos. 3:09-cv-384-JPG, 3:10-cv-

696-JPG, 2011 WL 601653, at **3, 9 (S.D. Ill. Feb. 11, 2011) (certifying classes of "[a]ll

current and vested former U.S. Bank Pension Plan participants" who were allegedly

harmed under 23(b)(1) because "[i]f relief were granted with respect to some class

members . . . but not as to others, the defendants would likely be faced with the

impossible task of administering the Plan and distributing benefits under the Plan using

multiple, inconsistent standards").  None of those cases distinguish plan members on

the basis of job role, and the court knows of no legal bases on which to do so.

_____

[7] Indeed, if the court were to accept the plaintiffs' argument that distinctions among job
classifications are relevant to the 23(b)(1) analysis, the logical result would seem to be that the proposed
classes are improper for certification under 23(b)(1) because of job classifications.  As noted in the
Background Section, see supra Section II, the Local 1522 bargaining unit represents a range of at least
ten different job classifications.  If the court found that differences in job classification were relevant, then
that would seem to apply equally to the different job classifications represented by Local 1522 as it would
to the job classifications not represented by Local 1522.

In cases where courts have found that ERISA fiduciaries need not treat all employees alike, that conclusion has been based on distinctions among plan members that are directly relevant to fiduciary duty, such as releases signed by employees, see Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 321 (S.D.N.Y. 2003), or material differences in plan terms, see Wood v. Prudential Retirement Insurance and Annuity Company, No. 3:15-cv-1785 (VLB), 2017 WL 3381007, at *5 (D. Conn. Aug. 4, 2017) (certification improper where allegation was that defendants set crediting rate of investment plan too low and crediting rates varied among the "thousands of individual retirement plans" at issue).

In sum, ERISA generally establishes fiduciary obligations on a plan-wide basis, which is the very reason that courts often certify ERISA classes under 23(b)(1). The court therefore concludes that the proposed classes of Local 1522 members, who constitute a subgroup of the plans' membership, are under-inclusive with respect to the fiduciary duty claims.

For similar reasons, the court concludes that certification pursuant to 23(b)(1) is inappropriate with respect to the claims that the defendants failed to provide benefits in violation of ERISA. The plaintiffs' contentions with respect to BHCC's failure to fund the benefits programs are not specific to Local 1522 or its members, but rather apply to all employees who are members of the benefits plans at issue. Indeed, the plaintiffs virtually admit as much in their Response when they argue that "should lost contributions to the pension plan be ordered to be reimbursed by the Court, all participants to the Plan, whether represented by Local 1522 or not, would benefit because the Plan would be sufficiently funded for those retiring at the current day." Pl.'s

Response (Doc. No. 273) at 4.  What this argument boils down to is an acknowledgement that the rights of non-parties would necessarily be affected by resolution of these allegations.  Although the plaintiffs paint a rosy picture of the implications for such certification—namely that recovery for Local 1522 members would mean recovery for all—it is also possible that the plaintiffs could be unsuccessful, or could recover less than they would if the case was litigated differently.

The court's conclusion is further buttressed by the very case to which the plaintiffs cited in support of their argument, Rogers v. Baxter International Inc., No. 04 C 6476, 2006 WL 794734, at *11 (N.D. Ill. Mar. 22, 2006).  In Rogers, the court certified a class of "all current and former Plan participants for whose individual accounts the Plan held shares of the Baxter Common Stock Fund at any time from January 1, 2001 to the present" pursuant to title 29, section 1132(a)(2), the breach of fiduciary duty provision. Id. at *1.  In certifying that class, the Rogers court observed that, "by its very nature, a claim under ERISA section [1132(a)(2)] can only be brought on behalf of plan participants" and rejected the defendants' argument that "separate actions would not impair class members' ability to protect their interests."  Id. at *11.  In concluding that 23(b)(1) was the appropriate type of class for the proposed class—which consisted of all plan members who were allegedly harmed—the Rogers opinion is entirely consistent with this court's view and undercuts the position of the plaintiffs.

The plaintiffs also assert that certifying the proposed classes will not create a risk that the defendants will be subjected to inconsistent standards because Local 1522 negotiated some plan terms for the members of its bargaining unit, and those terms may differ from the terms to which other employees agreed.  See Pl.'s Response (Doc.

No. 273) at 3 ("For example, Local 1522 may have a 4.75% annual contribution by the employers and others may have much less, or a different retirement age.").  This argument might have some basis if the plaintiffs brought suit to challenge the defendants' failure to honor a plan term for which they bargained.  However, the plaintiffs' claims have nothing to do with the specific plan terms for which Local 1522 bargained, such as the percent of the annual contribution or the retirement age.  <u>See generally</u> 3d Am. Compl.; <u>see also</u> <u>supra</u> Section II (describing nature of claims alleged in the Third Amended Complaint).

This court recently rejected an analogous argument raised by the party opposing the motion for class certification, namely that the proposed class could not be certified because the terms of the plans in question varied.  In <u>Meidl v. Aetna</u>, the named plaintiff alleged that the defendant's denial of benefits for a certain kind of mental health treatment was arbitrary and capricious.  <u>Meidl</u>, 2017 WL 1831916.  The proposed class in <u>Meidl</u> consisted of "[a]ll participants or beneficiaries in Aetna Plans administered by Aetna (or any of its operating divisions)" who were denied coverage for a certain treatment.  <u>Id.</u> at *1.  The defendant argued that certification was improper because "the plan provisions that control resolution of Plaintiff's claims . . . vary from plan to plan."  <u>Id.</u> at *9.  This court rejected the defendant's argument, concluding that the harm alleged was uniform with respect to the proposed class because all plan members who had been denied coverage for the treatment in question were denied for the same reason.  <u>Id.</u>

The same logic that led this court to reject the defendant's argument in <u>Meidl</u> leads to the conclusion that the proposed classes are under-inclusive in the case at bar:

the distinctions that the plaintiffs have asserted are irrelevant to the harm alleged or the relief requested.  Because the defendants' alleged failures to provide benefits and breach of fiduciary duty apply equally to all members of the plans at issue and have nothing to do with the putative class's association with Local 1522, a class comprised of only Local 1522 members would not be representative of those harmed by the defendants' alleged conduct.

The plaintiffs cite the court to In re Polaroid ERISA Litigation, 240 F.R.D. 65 (S.D.N.Y. 2006), as an example of a case in which a class of fewer than all plan members was certified.  In In re Polaroid, the court concluded that the proposed class did not violate ERISA's requirement that suits brought pursuant to Section 1109 be brought on behalf of the plan "as a whole," despite the fact that the proposed class in question was comprised of a subset of the total plan membership.  240 F.R.D. at 72. Specifically, the proposed class included only those beneficiaries of an investment plan whose plans had included Polaroid stock.  Id. at 70.  The allegation in In re Polaroid was that the defendants had violated their fiduciary duty by "maintaining the Plan's investments in Polaroid common stock despite (1) their knowledge of certain accounting irregularities; and (2) the precipitous decline in price that the stock had taken."  Id.  The In re Polaroid court noted that the Second Circuit had not explicitly permitted this type of class to proceed and had rejected individual and small group suits as unrepresentative of the plan as a whole.  Id. at 72–73.  Nevertheless, citing decisions from other circuits, the district court certified the proposed class under 23(b)(1), observing, "Plaintiffs assert claims on behalf of a broad class of participants in the Plan, [and] seek damages for injuries suffered by the Plan."  Id. at 73 (citing In re Schering-Plough Corp. ERISA Litig.,

420 F.3d 231, 234–35 (3d Cir. 2005); Kuper v. Iovenko, 66 F.3d 1447, 1453 (6th Cir.

1995); Milofsky v. Am. Airlines, Inc., 442 F.3d 311, 313 (5th Cir. 2006) (per curiam);

LaRue v. DeWolff, Boberg & Assocs., Inc., 458 F.3d 359, 363 (4th Cir. 2006)).

The court concludes that In re Polaroid is distinguishable from the case as bar

because the subset of plan members in the proposed class was based on the harm

alleged. The cases cited by the In re Polaroid court support this conclusion. For

example, in In re Schering-Plough, the Third Circuit held that a subgroup of plan

participants could bring a Section 1109 claim. 420 F.3d at 241–42. In that case, the

allegations were that the fiduciary had breached its duty with respect to a savings plan

that only a subset of employees participated in, and the proposed class was based on

that subset. Id. at 232–33. In concluding that this subgroup claim was properly stated,

the Third Circuit distinguished Russell:

> The Court did not hold in Russell that a subgroup of plan
> participants cannot file derivative action on behalf of an
> ERISA employee benefits plan if the fiduciaries' alleged
> breach did not affect the investments of participants in other
> subgroups. That issue was simply not before the Court.

Id. at 241 (emphasis added). In other words, the Third Circuit approved of a subgroup

class where the harm alleged affected only the subgroup.

The Supreme Court essentially agreed with the Third Circuit several years after

In re Schering-Plough was published, holding that an ERISA beneficiary could bring an

individual suit where the harm alleged was individualized. LaRue v. DeWolff, Boberg &

Associates, Inc., 552 U.S. 248, 255–56 (2008). In LaRue, the Court distinguished

allegations of harm to "defined benefit plans," which promise a specific result, from harm

to "defined contribution plans," which promise a specific contribution. Id. The LaRue

Court concluded that Russell's "entire plan" language was only relevant where

"[m]isconduct by the administrators . . . will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." Id. at 255.  In other words, the LaRue Court distinguished plans in which misconduct could be committed and remedied as to individuals from plans in which misconduct must, because of the plan structure, be committed and remedied as to the plan in its entirety.

Here, the plaintiffs' allegations are that the defendants withheld money from employee paychecks for healthcare premiums but did not use the money for that purpose; that the defendants failed to pay fees and expenses to their third party administrators (first UMR, Inc. and then Meritain); and that, as a result of these failures, employees were left without insurance that they had been promised.  3d Am. Compl. at ¶¶ 7–16.  These allegations, if true, amount to misconduct as to the plan as a whole, and attempting to remedy harm to a subgroup of employees raises the risks that 23(b)(1) is designed to avoid, namely "impair[ing] or imped[ing]" the ability of non-parties to protect their interests or "establish[ing] incompatible standards of conduct for the [defendants]."  Fed. R. Civ. P. 23(b)(1).  In this way, the plaintiffs' allegations are materially distinguishable from the allegations in LaRue, in which the plaintiff alleged that he had requested that the plan fiduciary take specific actions with respect to his individual investment account, and that the fiduciary failed to do so.  LaRue, 552 U.S. at 251.  Perhaps more significantly, the relief requested in this case, which includes a variety of injunctive and declaratory relief and monetary damages—is materially distinguishable from the relief sought in LaRue, which was simply to make the individual investment account whole.  Id.  Therefore, even assuming that the subgroup classes proposed by the plaintiffs are not statutorily barred by ERISA, they still present the risks

that Rule 23(b)(1) is designed to avoid.

Finally, in addition to the problem of under-inclusiveness, class certification is improper pursuant to Rule 23(b)(1) because the plaintiffs allege a wide range of claims––including breach of contract claims, notice-related ERISA claims, and common law tort claims—which may not be appropriate for certification pursuant to 23(b)(1), depending in part on the relief requested for those claims, which is not readily apparent from either the Third Amended Complaint or the plaintiffs' Motion to Certify.

In sum, the court concludes that certification of the proposed classes is improper pursuant to Rule 23(b)(1) because the harms alleged relate to the plan as a whole, and the proposed class is not representative of the plan.

2.       Rule 23(b)(2) Type

The second type of class action is one in which "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2)'s "justification[ ] for class treatment" is "that the relief sought must perforce affect the entire class at once." Wal-Mart, 564 U.S. at 361–62.

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

Id. at 360–61 (internal quotation marks and citation omitted). Thus, "claims for

individualized relief (like [backpay]) do not satisfy the Rule." Id. at 360.  Moreover,

"claims for monetary relief" may not "be certified under" Rule 23(b)(2), "where [ ] the

monetary relief is not incidental to the injunctive or declaratory relief." Id. at 360.  While

Wal-Mart "left open the question whether incidental monetary relief may be sought on a

class-wide basis pursuant to Rule 23(b)(2)," the Second Circuit has since held that

monetary relief may still be sought pursuant to Rule 23(b)(2) "when that relief is

incidental to a final injunctive or declaratory remedy." Amara, 775 F.3d at 519–20.  Like

Rule 23(b)(1), Rule 23(b)(2) provides no opportunity for . . . class members to opt out,

and does not even oblige the District Court to afford them notice of the action." Wal-

Mart, 564 U.S. at 362.

        As a threshold matter, the court notes that the under-inclusivity of the proposed

classes is as much a problem under (b)(2) as it is under (b)(1), for the same reasons

articulated with respect to (b)(1). See supra Section IV(B)(1).  In short, certifying the

proposed classes of fewer than all plan members who were alleged harmed by the

defendants' actions raises the same risks of "impair[ing] or imped[ing]" the ability of non-

parties to protect their interests, as well as the risk of "establish[ing] incompatible

standards of conduct for the [defendants]." Fed. R. Civ. P. 23(b)(1).

        In addition to the under-inclusivity issue, the plaintiffs' request for certification

pursuant to Rule 23(b)(2) raises the additional issue of whether the plaintiffs' demands

for monetary damages can reasonably be construed as "incidental" to their demands for

injunctive and declaratory relief.[8]

---

[8] The court notes that the Supreme Court has indicated that the limitations on money damages
available under Rule 23(b)(2) apply with equal force under Rule 23(b)(1). Wal-Mart, 564 U.S. at 362
(noting that "unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory" and, "[g]iven that structure,

Certain of the plaintiffs' requests for relief would be appropriate pursuant to Rule 23(b)(2). For example, the plaintiffs request declaratory relief that the defendants' "refusal to provide health insurance coverage, make payments to designated entities and provide pension benefits and contributions . . . is a violation of contract and [ERISA]." 3d Am. Compl. at 74. The plaintiffs further seek to enjoin the defendants from terminating health insurance coverage. Id. at 75.

However, much of the relief requested by the plaintiffs is monetary. In addition to their general request for punitive, compensatory, and consequential damages, 3d Am. Compl. at 76, the plaintiffs also bring claims for which money damages are the only remedy. For example, the plaintiffs allege that BHCC violated three ERISA notice requirements including: failing to provide "[n]otice of failure to meet minimum funding standards," title 29, section 1021(d) of the United States Code (Count Thirteen); failure to provide annual plan reports, title 29, section 1024(b) of the United States Code (Count Fourteen); and failure to provide pension benefit statements, title 29, section 1025(a)(1)(A) of the United States Code (Count Fifteen). The plaintiffs assert that the defendants are liable pursuant to title 29, section 1132(c) of the United States Code ("Section 1132(c)") for these violations. Section 1132(c) provides for liquidated money damages only. See Varity Corp. v. Howe, 516 U.S. 489, 507 (1996) (describing Section 1132(c) relief as "liquidated damages"). Claims exclusively for monetary damages are not appropriate for a Rule 23(b)(2) class.

Other of the claims brought by the plaintiffs, if successful, may entitle them to

---

we think it clear that individualized monetary claims belong in Rule 23(b)(3)"). The court addresses the issue of monetary damages under 23(b)(2) in light of the express purpose of that subsection and, because the court has concluded that 23(b)(1) is improper for independent reasons, does not reach the question of whether Rule 23(b)(1) and Rule 23(b)(2) are identical in this respect.

monetary damages, equitable relief, or both.  For example, with respect to the claim that the defendants failed to provide health insurance benefits, the plaintiffs demand consequential damages, "including, but not limited to, the remaining charges incurred on unpaid claims, late fees, wage garnishments, judgments, liens and the destruction of their credit ratings."  Pl.'s Mem. at 7.  The plaintiffs also seek relief in the form of reprocessing of denied health coverage claims, which has been construed as injunctive relief.  See Meidl, 2017 WL 1831916, at **20–21 (collecting cases).

The plaintiffs argue that certification under Rule 23(b)(2) is proper because any monetary relief sought by the plaintiffs is "incidental" to the injunctive and declaratory relief sought in this case.  Pl.'s Response (Doc. No. 273) at 6.  The plaintiffs further assert that, "[i]n [this] case, monetary relief benefiting the whole class, without individual adjudications is possible for the incidental damages."  Id. at 6–7.

Based on the harm alleged in the Third Amended Complaint and reiterated in the Plaintiffs' Memorandum, the court cannot conclude that the monetary damages requested are "incidental" to the injunctive relief sought.  In Wal-Mart, the Supreme Court adopted the Fifth Circuit's view that "incidental damage should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new substantial legal or factual issues, nor entail complex individualized determinations."[9] Wal-Mart, 564 U.S. at 366 (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)).  This court cannot fathom how the consequential damages alleged in this case could be resolved without additional

---

[9] The court notes that, in Wal-Mart, the Court did not hold that incidental damages are available under Rule 23(b)(2), but merely determined that it need not reach the question because the monetary damages sought were not "incidental."  564 at 366.

29

hearings to determine, for example: the extent to which individual plaintiffs were entitled to benefits, denied coverage, charged late fees, had wages garnished, judgments entered against them, liens placed on their property, and credit ratings harmed.  These are complex factual questions that cannot be determined as to the class in general.

Finally, the plaintiffs suggest that, "[t]o the extent that individual adjudications would be needed to remedy destruction of credit ratings and other forms of individualized relief requested by the Plaintiffs, those items could be removed from the class action and a hearing on individualized damages could occur at a later date."  Pl.'s Response (Doc. No. 273) at 7.  The plaintiffs do not suggest any authority upon which the court could take that approach, and the court interprets Wal-Mart to explicitly foreclose that possibility.  See Wal-Mart, 564 U.S. at 366 ("[I]ncidental damages should not require additional hearings to resolve the disparate merits of each individual's case . . . .") (quoting Allison, 151 F.3d at 415).  The court therefore concludes that certification pursuant to 23(b)(2) is improper.

### 3.     Rule 23(b)(3) Type

The third type of class action is one in which "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The court is not persuaded that an opt-out class is appropriate here.  First, with respect to the plaintiffs' claims for injunctive and declaratory relief, certification under (b)(3) would present the same under-inclusiveness problem as would certification under (b)(1) or (b)(2), except to a greater degree: under (b)(3) not only would the class

exclude employees who are not represented by the Local 1522 bargaining unit, but it would not even make all members of the bargaining unit parties to the case.  The plaintiffs seek class-wide injunctive and declaratory relief and such relief may be dispositive of the rights of all members of the Local 1522 bargaining unit (as well as other plan members).  Allowing individuals to opt-out of the litigation would therefore be improper.  See supra Section IV(B)(1)–(2).

Second, with respect to claims for monetary damages, the court is not persuaded that common questions "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The plaintiffs argue that "resolution of the legal or factual questions in each member's case can be achieved through generalized proof, and such issues are more substantial than the issues subject to individualized proof," which makes class resolution more "efficient" and protects the rights of individuals who "are unlikely to have the resources to pursue individual actions."  Pl.'s Response (Doc. No. 273) at 8–9.  The court agrees that there are legal and factual questions that apply generally to all members of the proposed class, as stated in Section IV(A)(2), supra.  However, based on the pending Motion for Certification and the Third Amended Complaint, there are also a wealth of issues requiring individualized proof.  As previously noted, the plaintiffs are seeking compensatory, consequential, and punitive damages.  See 3d Am. Compl. at 74–76.  If the plaintiffs are successful in proving, for example, that the defendants breached their contractual and / or statutory obligation to provide benefits, determining damages owed to any given class member would likely involve complex individualized proof.  For example, an individual who paid a hundred dollars out of pocket for a medication that should have been covered by insurance

would have a very different claim for damages than an individual who went without chemotherapy treatment for six weeks because her treatment was not covered. In short, while the court does not foreclose the possibility that common questions may predominate with respect to claims for monetary damages, the plaintiffs have failed to show this by a preponderance of the evidence in their pending Motion to Certify and related filings.

## V.    CONCLUSION

What the preceding analysis boils down to is this: the Third Amended Complaint and the Motion for Certification contain a wide range of legal claims and request a wide range of relief. One or more of the claims and one or more of the types of relief requested may be appropriate for certification, and the court is cognizant that district courts generally enjoy broad discretion to "alter or modify" proposed classes. In re Sumitomo Copper Litig., 262 F.3d at 139. However, the court is neither qualified nor inclined to divine from the sprawling Third Amended Complaint which of the thirteen counts alleged by the putative class ought to be litigated as a class action and what type of relief should be sought. For example, a class comprised solely of Local 1522 members may be appropriate as to the breach of contract claims based on the collective bargaining agreement, but whether it would be appropriately certified as a Rule 23(b)(2) class or a Rule 23(b)(3) class would depend on the type of relief sought, which is not clear from the Third Amended Complaint. What is clear, however, is that the pending Motion—which moves for certification as to all claims and all relief—must be denied, as the proposed subclasses cannot be certified under any of the Rule 23(b) types.

Therefore, the Motion for Class Certification (Doc. No. 194) is **DENIED**

**WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 21st day of March, 2018.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge